IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CARSON SMITH, an individual,               10-CV-72-BR
and SMITHONLY CORPORATION,

          Plaintiffs,                      OPINION AND ORDER

v.

DENNIS HEALY and HOLLY HEALY
as individuals; SKY
CORPORATION, LTD, an
unincorporated business
entity; RKD PREMIUM PRODUCTS,
INC., an Oregon corporation;
KENNETH TANG, an individual;
and K'S PREMIUM PRODUCTS
COMPANY, an unincorporated
business entity,

          Defendants.


THEODORE M. BRINDLE
CARY COLLIN NOVOTNY
Brindle McCaslin & Lee, PC
101 S.W. Main Street
Suite 950
Portland, OR 97204
(503) 224-4825

          Attorneys for Plaintiffs


1 - OPINION AND ORDER

**MICHAEL M. RATOZA**
**CHAD M. COLTON**
Bullivant Houser Bailey PC
888 S.W. Fifth Ave., Ste. 300
Portland, OR 97204-2089
(503) 499-4695

        Attorneys for Defendants Dennis Healy; Holly Healy; Sky
        Corporation, Ltd.; and RKD Premium Products, Inc.

**BROWN, Judge.**

    This matter comes before the Court on Plaintiffs' Motion
(#13) for Remand to State Court; the Motion (#9) for Summary
Judgment of Defendants Dennis Healy, Holly Healy, Sky
Corporation, Ltd., and RKD Premium Products, Inc.; and
Plaintiffs' Motion (#24) for Leave to File [Second] Amended
Complaint.

    For the reasons that follow, the Court **DENIES** Plaintiffs'
Motion for Remand, **GRANTS** Defendants' Motion for Summary
Judgment, and **DENIES** Plaintiffs' Motion for Leave to File
[Second] Amended Complaint.


<u>**BACKGROUND**</u>

    On January 30, 2008, Plaintiffs filed an application with
the United States Patent and Trademark Office (PTO) for a patent
on a door-lock light.  On July 21, 2008, Plaintiffs filed an
application for a trademark with the PTO for the mark LOCK LIGHT
KEY LIGHT for their door-lock light with a first claimed use on

April 3, 2008.  The PTO has not issued either a patent or a trademark to Plaintiffs for their product.

In March 2008 Defendant Dennis Healy met Plaintiff Carson Smith, and Smith showed Dennis Healy the door-lock light.  At some point in 2008, Plaintiffs and Defendants Dennis Healy, Holly Healy, and Sky Corporation agreed that Sky Corporation would assist Plaintiffs in the design, development, manufacture, and sale of the door-lock light.

In October 2008 Plaintiffs displayed the door-lock light and distributed a flyer that described the product at the "Hong Kong Mega Show" trade show.  Plaintiffs also displayed the door-lock light on their website beginning in October 2008.

In March 2009 Plaintiffs terminated their agreement with Sky Corporation and their relationship with Defendants.

Plaintiffs allege on May 1, 2009, and later Defendants continued to market and to sell the door-lock light.

On October 20, 2009, Plaintiffs filed a Complaint in Multnomah County Circuit Court against Defendants alleging claims for breach of an implied-in-fact contract; violation of Oregon's Uniform Trade Secrets Act (UTSA), Oregon Revised Statute § 646.461, *et seq.;* and breach of fiduciary duty for which Plaintiffs sought a preliminary injunction.

On December 18, 2009, Plaintiffs filed an Amended Complaint in Multnomah County Circuit Court against Defendants alleging

3 - OPINION AND ORDER

claims for breach of an implied contract, violation of Oregon's UTSA, and breach of fiduciary duty.  In their Amended Complaint, Plaintiffs sought a permanent injunction.

On January 22, 2010, Defendants Dennis Healy, Holly Healy, Sky Corporation, and RKD Premium Products[1] removed the matter to this Court on the ground that Plaintiffs' claims are preempted by patent law because states "may not offer patent-like protection to intellectual creations which would otherwise remain unprotected as a matter of federal law."

On January 29, 2010, Defendants filed an Answer in which they asserted five Affirmative Defenses as well as a Counterclaim seeking a declaration that Dennis Healy, Holly Healy, and Sky Corporation are co-inventors of the door-lock light and door-lock light design.

On April 13, 2010, Plaintiffs filed a Motion to Remand.  On April 14, 2010, the Court struck Plaintiffs' Motion because Plaintiffs' failed to comply with Local Rule 7-1.

On April 16, 2010, Defendants filed a Motion for Summary Judgment.  On April 19, 2010, Plaintiffs filed a renewed Motion to Remand.

On June 30, 2010, Plaintiffs filed a Motion for Leave to

---

[1] In their Notice of Removal, Defendants note Plaintiffs have never served Defendants Kenneth Tang or K's Products Company, and, therefore, their consent was not required for removal.

4 - OPINION AND ORDER

File a [Second] Amended Complaint.

On August 9, 2010, the Court entered an Order in which it (1) struck Plaintiffs' Reply to their Motion for Leave to Amend; (2) denied as moot Defendants' objections to Plaintiffs' Reply; (3) noted the Court first would address Plaintiffs' Motion to Remand, then Defendants' Motion for Summary Judgment, and, finally, Plaintiffs' Motion for Leave to File a [Second] Amended Complaint; and (4) prohibited the parties from filing any further motions without leave of the Court.

### PLAINTIFFS' MOTION TO REMAND

#### Standards

28 U.S.C. § 1446(a) provides in pertinent part:  "A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal."  28 U.S.C. § 1446(b) provides in pertinent part:  "The notice of removal of a civil action . . . shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

A motion to remand is the proper procedure for challenging removal.  *Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974 (9th

Cir. 2007).  The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).  *See also Prize Frieze, Inc. v. Matrix, Inc.,* 167 F.3d 1261, 1265 (9th Cir. 1999), *overruled on other grounds by Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006).  The party seeking removal bears the burden of establishing by a preponderance of the evidence that all removal requirements are met.  *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).  *See also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

## Discussion

Defendants removed this action to this Court on the ground that Plaintiffs' claims are preempted by federal patent law because Plaintiffs seek patent-like remedies in their state-law claims, and, therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1441(b).  Plaintiffs move to remand this matter on the ground that they do not seek patent-like remedies in their state-law claims, and, therefore, Plaintiffs' claims are not preempted by patent law.  Thus, Plaintiffs argue this Court does not have subject-matter jurisdiction.

## I.    Patent-law preemption

"Federal Circuit law governs whether federal patent law preempts a state law claim." *Ultra-Precision Mfg., Ltd. v. Ford*

*Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005).

Defendants removed this matter on the ground that Plaintiffs' claims are preempted by patent law because Plaintiffs seek "patent-like" protection through state-law claims.  As the Federal Circuit explained in *Ultra-Precision*,

> [u]nder the Supremacy Clause, state law that conflicts with federal law is without effect. U.S. Const. art. VI, cl. 2; *Bonito Boats*, 489 U.S. at 168, 109 S. Ct. 971; *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1331 (Fed. Cir. 1998), *overruled in part on other grounds by Midwest Indus.*, 175 F.3d at 1361.  Preemption can be any of three types:  explicit, field, or conflict preemption.  *Hunter Douglas*, 153 F.3d at 1332.  Because federal patent law does not provide explicit preemption, 35 U.S.C. §§ 1-376 (2000); *Hunter Douglas*, 153 F.3d at 1332, and because Congress does not intend to occupy exclusively the field of unjust enrichment law [or contract law], *American Cyanamid*, 196 F.3d at 1371, we are concerned in this case with only conflict preemption.  Conflict preemption occurs when state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Aronson*, 440 U.S. at 262, 99 S. Ct. 1096 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941)).

*Id*. at 1377.  In addition,

> [f]ederal law preempts state law that offers "patent-like protection" to discoveries unprotected under federal patent law.  *Bonito Boats*, 489 U.S. at 156, 109 S. Ct. 971.  Federal patent law reflects the objectives of Congress, which include "seek[ing] to foster and reward invention," "promot[ing] disclosure of inventions to stimulate further innovation and to permit the public to practice the invention once the patent expires," promoting "the stringent requirements for patent protection . . . to assure that ideas in the public domain remain there for the free use of the public," *Aronson*, 440 U.S. at 262, 99 S.

> Ct. 1096 (citing *Kewanee Oil*, 416 U.S. at 480-81,
> 94 S. Ct. 1879), providing a "clear federal
> demarcation between public and private property,"
> and promoting "nationwide uniformity in patent
> law," *Bonito Boats*, 489 U.S. at 162-63, 109 S. Ct.
> 971.  A state cause of action that frustrates
> these objectives is preempted.  *Id.* at 156-57,
> 161, 109 S. Ct. 971; *Aronson*, 440 U.S. at 262, 99
> S. Ct. 1096.

*Id.* at 1377-78.

In *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, the
Supreme Court addressed the issue of preemption of a state law by
patent law.  489 U.S. 141 (1989).  In that case, the plaintiff
developed a hull design for a fiberglass recreational boat, but
the plaintiff did not apply for patent protection for either its
design or the process by which the hull was manufactured.  *Id.* at
144.  Six years after the plaintiff developed its hull design,
the Florida Legislature enacted a statute that made it "unlawful
for any person to use [the plaintiff's manufacturing process] to
duplicate for the purpose of sale any manufactured vessel hull
. . . made by another without the written permission of that
other person."  *Id.* at 144-45 (citation omitted).  The statute
also made it unlawful for a person to "knowingly sell a vessel
hull . . . duplicated in violation of" the statute.  *Id.* at 145.
Subsequently, the plaintiff filed an action in state court
alleging the defendant violated the Florida statute by using the
plaintiff's process for hull design and by selling boats with the
plaintiff's design.  The plaintiff sought an injunction

8 - OPINION AND ORDER

prohibiting the defendant from "continuing to unlawfully
duplicate and sell [the plaintiff's] hulls or components."  *Id.*
The defendant moved to dismiss on the ground that the Florida
statute conflicted with patent law and, therefore, was invalid
under the Supremacy Clause of the United States Constitution.
The Florida Supreme Court concluded the Florida law impermissibly
interfered with patent law.  The United States Supreme Court
affirmed the decision of the Florida Supreme Court and noted

> in *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470,
> 94 S. Ct. 1879, 40 L. Ed.2d 315 (1974), we held
> that state protection of trade secrets did not
> operate to frustrate the achievement of the
> congressional objectives served by the patent
> laws.  Despite the fact that state law protection
> was available for ideas which clearly fell within
> the subject matter of patent, the Court concluded
> that the nature and degree of state protection did
> not conflict with the federal policies of
> encouragement of patentable invention and the
> prompt disclosure of such innovations.
>
> Several factors were critical to this conclusion.
> First, because the public awareness of a trade
> secret is by definition limited, the Court noted
> that "the policy that matter once in the public
> domain must remain in the public domain is not
> incompatible with the existence of trade secret
> protection." *Id.*, at 484, 94 S. Ct., at 1887.
> Second, the *Kewanee* Court emphasized that "[t]rade
> secret law provides far weaker protection in many
> respects than the patent law." *Id.*, at 489-490,
> 94 S. Ct., at 1889-1890. . . .  The public at
> large remained free to discover and exploit the
> trade secret through reverse engineering of
> products in the public domain or by independent
> creation. *Id.*, at 490, 94 S. Ct., at 1890.  Thus,
> the possibility that trade secret protection would
> divert inventors from the creative effort
> necessary to satisfy the rigorous demands of
> patent protection was remote indeed.  *Ibid.*

> Finally, certain aspects of trade secret law
> operated to protect non-economic interests outside
> the sphere of congressional concern in the patent
> laws.  As the Court noted, "[A] most fundamental
> human right, that of privacy, is threatened when
> industrial espionage is condoned or is made
> profitable."  *Id.*, at 487, 94 S. Ct., at 1889
> (footnote omitted). There was no indication that
> Congress had considered this interest in the
> balance struck by the patent laws, or that state
> protection for it would interfere with the
> policies behind the patent system.

*Id.* at 155-56.  In contrast to the trade secrets law discussed in

*Kewanee*, the Court in *Bonita* noted the Florida statute at issue

> is aimed directly at preventing the exploitation
> of the design and utilitarian conceptions embodied
> in the product itself, . . . [the statute] endows
> the original boat hull manufacturer with rights
> against the world, similar in scope and operation
> to the rights accorded a federal patentee . . .
> [and] offers this protection for an unlimited
> number of years to all boat hulls and their
> component parts, without regard to their
> ornamental or technological merit.

*Id.* at 158-59.  Accordingly, the Court concluded the Florida

statute impermissibly interfered with patent law.

On the other hand, the Supreme Court concluded in *Aronson v.*

*Quick Point Pencil Co.* that patent law did not preempt a state-

law claim for breach of the parties' royalties contract.  440

U.S. 257 (1979).  The plaintiff in *Aronson* filed a patent

application in 1955 for a keyholder.  In 1956 while the

application was pending, the plaintiff entered into a contract

with the defendant for the manufacture and sale of the keyholder.

In the contract the defendant agreed to pay the plaintiff a

royalty of 5% of the sales price in return for the exclusive
right to make and to sell the keyholder.  If the plaintiff's
patent was not granted within five years, the defendant would pay
only 2.5% royalties as long as the defendant continued to sell
the product.  The defendant paid the plaintiff 5% royalties for
five years.  When the plaintiff did not receive a patent, the
defendant continued to pay the plaintiff 2.5% royalties for 14
more years.  *Id*. at 259-60.  In 1975 the defendant brought an
action against the plaintiff seeking a declaration that the
royalty agreement was unenforceable because "state law which
might otherwise make the contract enforceable was preempted by
federal patent law."  *Id*. at 260.  The Supreme Court held the
contract was not preempted by patent law:

> Commercial agreements traditionally are the domain
> of state law.  State law is not displaced merely
> because the contract relates to intellectual
> property which may or may not be patentable; the
> states are free to regulate the use of such
> intellectual property in any manner not
> inconsistent with federal law. . . .  In this as
> in other fields, the question of whether federal
> law pre-empts state law involves a consideration
> of whether that law stands as an obstacle to the
> accomplishment and execution of the full purposes
> and objectives of Congress.  If it does not, state
> law governs.

*Id*. at 262 (citations and quotations omitted).  The Court
concluded the parties' royalty agreement was not inconsistent
with the Congressional objectives of the patent system because
"[p]ermitting inventors to make enforceable agreements licensing

11 - OPINION AND ORDER

the use of their inventions in return for royalties provides an additional incentive to invention." *Id*.  In addition, "encouraging [the plaintiff] to make arrangements for the manufacture of her keyholder furthers the federal policy of disclosure of inventions." *Id*.  Finally, the Court found

> [e]nforcement of the agreement does not withdraw any idea from the public domain.  The design for the keyholder was not in the public domain before [the defendant] obtained its license to manufacture it.  In negotiating the agreement, [the plaintiff] disclosed the design in confidence.  Had [the defendant] tried to exploit the design in breach of that confidence, it would have risked legal liability.  It is equally clear that the design entered the public domain as a result of the manufacture and sale of the keyholders under the contract.

*Id*. at 262-63.  In summary, "[e]nforcement of [the] agreement . . . does not prevent anyone from copying the keyholder.  It merely requires [the defendant] to pay the consideration which it promised in return for the use of a novel device which enabled it to pre-empt the market." *Id*. at 264.

In *Ultra-Precision* the Federal Circuit addressed the issue of patent-law preemption of a state-law claim for unjust enrichment.  In that case the defendant was having trouble solving a noise, vibration, and harshness (NVH) problem in its air-conditioner compressor.  One of the defendant's employees asked the plaintiff for help in resolving the problem.  Although the parties did not sign a contract, the plaintiff worked on the problem and presented to the defendant a device that addressed

12 - OPINION AND ORDER

the problem in May 1989.  Later the plaintiff received a patent
on the device.  Subsequently, the defendant informed the
plaintiff that the plaintiff's device did not "work alone" in the
defendant's system, and, therefore, the defendant was "continuing
to investigate the issue."  In 2000 the plaintiff discovered what
it believed to be its "solution or device" in one of the
defendant's vehicles.  In 2001 the plaintiff filed an action
alleging, among other things, a claim for unjust enrichment.  411
F.3d at 1374.  The plaintiff did not allege its device was
disclosed to the defendant in confidence or that its device was
protected as a trade secret.  Instead the plaintiff alleged it
was entitled to benefit from "the defendant's incentive to
suppliers to share half of any cost savings of the defendant
achieved by a supplier's innovation" because

> Defendant has been, continues to be, and will in
> the future be unjustly enriched by (a) using,
> manufacturing, and selling vehicles equipped with
> Plaintiff's technology without compensating
> Plaintiff, and (b) patenting Plaintiff's
> invention, and maintaining, and exercising
> exclusive rights thereto to the exclusion of
> Plaintiff until the year 2010 or later.

*Id*.  In its motions *in limine*, the defendant contended the
plaintiff's unjust-enrichment claim was preempted by patent law.
The district court granted the defendant's motion *in limine* and
invited the plaintiff to amend its complaint to allege an unjust
benefit other than the defendant's alleged cost savings from
using the plaintiff's idea after the plaintiff was issued a

13 - OPINION AND ORDER

patent on its device.  The plaintiff, however, declined to amend

its complaint.  On review of the district court's ruling on the

defendant's motion *in limine*, the Federal Circuit noted the

plaintiff did not claim any incremental benefit "over and above

the benefit the public received when [the plaintiff] published

the technical information it gave to [the defendant] when [the

plaintiff's] patents issued." *Id*.  In *Ultra-Precision* the

Federal Circuit distinguished *Aronson* by noting

> [the plaintiff] never alleged that it enjoyed a
> confidential relationship with [the defendant] or
> that its technical information enjoyed trade
> secret protection.  Nor did it allege that the
> information provided to [the defendant] by [the
> plaintiff] conferred a benefit for services
> rendered or for a head start over competitors.

*Id*. at 1380.  The court also distinguished *University of Colorado*

*Foundation v. American Cyanamid*.  In that case the court

concluded an inventor's unjust-enrichment claim was not preempted

by patent law because

> [the plaintiffs] did not seek to prevent the *use
> of information they placed in the public domain*;
> rather, they seek to prevent Cyanamid from
> unjustly securing the '634 patent and obtaining
> the *incremental profits* by copying significant
> portions of the Doctors' confidential manuscript
> describing the invention.  The district court's
> unjust enrichment remedy was specifically limited
> to *incremental profits* Cyanamid wrongfully made by
> obtaining the '634 patent and did not encompass
> total profits Cyanamid made by selling a product
> incorporating the Doctors' invention.

*Id*. at 1379 (quoting *Am. Cyanamid*, 342 F.3d 1298, 1307 (Fed. Cir.

2003)(emphasis in *Ultra-Precision*).  Ultimately, the Federal

14 - OPINION AND ORDER

Circuit concluded in *Ultra-Precision* that the plaintiff had not alleged any incremental benefit of the kind noted in *American Cyanamid* or *Aronson*, and, therefore, the Court affirmed the district court's decision.

## II.  Preemption of Plaintiffs' claims under patent law

In their Amended Complaint, Plaintiffs generally allege in pertinent part:

> 4.
> Plaintiffs are the inventor, designer and manufacturer of certain inventions known as the "door light design," (hereinafter sometimes referred to as "inventions").  Plaintiffs and Defendants Dennis M. Healy, Holly Healy and Sky Corporation Incorporated entered into an agreement whereby Defendants would perform certain work on behalf of Plaintiffs to assist in the research, development and distribution of the inventions and would act on behalf of Plaintiff in a fiduciary capacity.

> * * *

> 6.
> On or about early March, 2009, Plaintiffs mailed a letter to Defendants Dennis M. Healy, Holly Healy, Sky Corporation Inc., and RKD Premium Products Inc. terminating Plaintiffs' business relationship with all of these Defendants and thus withdrawing permission from these Defendants to use or disclose Plaintiffs trade secrets regarding the inventions.  On or about May, 2009, and continuing thereafter, Plaintiffs allege that defendants Dennis M. Healy, Holly Healy, Sky Corporation Inc., RKD Premium Products Inc., Kenneth Tang and K's Products Company acted in concert to deprive Plaintiffs of their property, both real and intellectual.

As noted, Defendants assert Plaintiffs' claims are preempted because Plaintiffs seek patent-like remedies in their state-law

15 - OPINION AND ORDER

claims.  Defendants contend Plaintiffs do not identify any
incremental benefit they are owed by Defendant beyond that
potentially encompassed by patent law (*i.e.*, damages for making,
using, offering to sell, or selling Plaintiffs' invention without
permission).

**A.  Plaintiffs' claims may be preempted even though Plaintiffs do not yet have a patent.**

Plaintiffs contend their state-law claims cannot be
preempted by patent law because the PTO has not issued a patent
to Plaintiffs.

Plaintiffs' contention is without merit.  In *Bonito Boats* "[t]here [was] no indication in the record that a patent
application was ever filed for protection of the utilitarian or
design aspects of the hull, or for the process by which the hull
was manufactured."  489 U.S. at 144.  Nevertheless, the Supreme
Court concluded the Florida statute that made it "unlawful for
any person to use the direct molding process to duplicate for the
purpose of sale any manufactured vessel hull or component part of
a vessel made by another without the written permission of that
other person" was preempted by patent law.  *Id.* at 168.

Similarly, the Ninth Circuit reasoned in *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.*, that

> patent law . . . establishes a zone of preemption
> broader than that of copyright law:  Even if
> Congress has left an area unprotected, *the fact
> that patent law could reach it preempts state-law*

> protection.  *See Sears, Roebuck & Co. v. Stiffel
> Co.*, 376 U.S. 225, 230-32, 84 S. Ct. 784, 788-89,
> 11 L. Ed.2d 661 (1964); *Compco Corp. v. Day-Brite
> Lighting, Inc.*, 376 U.S. 234, 237-38, 84 S. Ct.
> 779, 781-82, 11 L. Ed.2d 669 (1964).  Congress has
> balanced innovation incentives against promoting
> free competition, and state laws upsetting that
> balance are preempted.  Thus, a machine or process
> that does not satisfy the requirements of federal
> patent law . . . cannot be protected under either
> federal or state law.  For this reason, [the
> plaintiff's process] *must be protected by patent
> law or not at all.*

958 F.2d 896, 904 (9th Cir. 1992)(emphasis added).

Accordingly, even though Plaintiffs have not obtained a

patent, Plaintiffs' claims may still be preempted by patent law.

**B.    Plaintiffs' claim for breach of an implied-in-fact
contract is preempted by patent law.**

In Plaintiffs' claim against Defendants for breach of

an implied-in-fact contract, they allege Plaintiffs and

Defendants Dennis M. Healy, Holly Healy, and Sky Corporation

entered into an implied-in-fact contract "based on the parties'

actions."  Specifically, Plaintiffs allege the parties entered

into an agreement in which Defendants "would assist Plaintiffs in

the research, development, and marketing of Plaintiffs'

inventions and would act as Plaintiffs' fiduciary agent[s] in

return for monetary compensation."  Am. Compl. ¶ 8.  In addition,

Plaintiffs allege

> 9.
> Dennis and Holly Healy, and Sky Corporation
> Incorporated did certain acts consistent with the
> parties' agreement until on or about May 1, 2009,
> when Defendants, in breach of the parties'

17 - OPINION AND ORDER

agreement, misappropriated Plaintiffs' inventions
and used them for their own benefit.

10.
Defendants Kenneth Tang and K's Products Company
acted as agents for Defendants Dennis and Holly
Healy, and Sky Corporation Incorporated and
produced Plaintiffs' inventions while possessing
the knowledge that there [*sic*] acts were in breach
of the implied contract Plaintiffs had made with
Defendants Dennis and Holly Healy, and Sky
Corporation Incorporated.

Plaintiffs contend their claim for breach of an implied-in-fact

contract is like that in *Aronson*, and, therefore, it is not

preempted.

As noted, the Supreme Court in *Aronson* concluded the

parties' royalties contract was not preempted because it was not

inconsistent with any of the aims of Congress in passing the

Patent Act in light of the fact that "[e]nforcement of [the]

agreement . . . does not prevent anyone from copying the

keyholder.  It merely requires [the defendant] to pay the

consideration which it promised in return for the use of a novel

device which enabled it to pre-empt the market."  *Id*. at 264.

Thus, *Aronson* is distinguishable from this case because here

Plaintiffs seek the kind of relief the Court suggested in *Aronson*

would be preempted by patent law; *i.e.*, Plaintiffs seek general

damages for Defendants' production of Plaintiffs' product without

Plaintiffs' permission rather than seeking enforcement of a

royalty agreement that would require Defendants to pay Plaintiffs

18 - OPINION AND ORDER

in return for selling Plaintiffs' product.  Moreover, Plaintiffs put their product in the public domain in October 2008 by displaying it at the Hong Kong Mega Show and on their website.  Thus, unlike in *Aronson* where the design for the plaintiff's product was not in the public domain before the defendant obtained a license to manufacture it, in this case Plaintiffs' product was in the public domain before the parties entered into the alleged implied-in-fact contract.

The Court finds the facts in this case more closely resemble those in *Ultra-Precision*.  As in *Ultra-Precision*, Plaintiffs do not seek any incremental benefit over and above the benefit the public received when Plaintiffs placed their door-lock light design into the public domain at the October 2008 trade show.  In addition, Plaintiffs have not alleged the information they provided to Defendants conferred a benefit for services rendered or gave Defendants a head-start over competitors.  Instead, as noted, Plaintiffs seek general damages for Defendants' alleged production and sale of Plaintiffs' device despite the fact that Plaintiffs' device was not patented and was publicly disclosed by Plaintiffs at the trade show and on their website.  Ultimately enforcement of the alleged agreement would prevent others from using or copying Plaintiffs' product in contravention of the patent-law policy against withdrawing ideas from the public domain.  *See Aronson*, 440 U.S. at 1099.

19 - OPINION AND ORDER

Accordingly, the Court concludes on this record that Plaintiffs' claim against Defendants for breach of an implied-in-fact contract is preempted by patent law.

In addition, Plaintiffs concede their remaining claims arise out of the same set of facts as their claim for breach of an implied-in-fact contract, and, therefore, to the extent those claims are not preempted by patent law, this Court has supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(a). Accordingly, Defendants' removal of this action was proper, and, Plaintiffs' Motion to Remand is denied.


## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment as to all of Plaintiffs' claims.

## Standards

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

20 - OPINION AND ORDER

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of

the claim, the court may grant summary judgment. *Id.*

## Discussion

**I.  Defendants are entitled to summary judgment as to Plaintiffs' breach of an implied-in-fact contract claim brought under state law.**

Because the Court has concluded Plaintiffs' breach of an implied-in-fact contract claim brought under state law is preempted by patent law, the Court grants Defendants' Motion for Summary Judgment as to that claim. *See Ultra-Precision*, 411 F.3d at 1383 (affirming district court's grant of summary judgment as to the plaintiff's state-law claim for unjust enrichment because the court concluded it was preempted by patent law).

**II.  Defendants are entitled to summary judgment as to Plaintiffs' claim for violation of Oregon's UTSA.**

Oregon Revised Statute § 646.461(2)(d) defines misappropriation of a trade secret as:

> (d)  Disclosure or use of a trade secret of another without express or implied consent by a person, who at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was:
>
> > (A)  Derived from or through a person who had utilized improper means to acquire it.

Oregon Revised Statute § 646.461(4) defines a trade secret as:

> (4)  . . . information, including a drawing, cost data, customer list, formula, pattern, compila-tion, program, device, method, technique or process that:
>
> > (a)  Derives independent economic value, actual or potential, from not being generally

22 - OPINION AND ORDER

known to the public or to other persons who
can obtain economic value from its disclosure
or use; and

(b)  Is the subject of efforts that are
reasonable under the circumstances to
maintain its secrecy.

In their Amended Complaint, Plaintiffs allege the following
with respect to their claim that Defendants violated Oregon's
UTSA:

15.

The door light design is a trade secret that
qualifies as information that derives economic
value from not being generally known to the
public, because it is a design that has
significant consumer market potential and
Plaintiffs have elected to keep the design secret
from 16 anyone other than those individuals and
entities, namely, Defendants Dennis M. Healy,
Holly Healy, Sky Corporation Inc., and RKD Premium
Products Inc., whom Plaintiffs have chosen to
contract with in order to make, market, and sell
the door light design to the consumer market.
Furthermore, the efforts by Plaintiffs to maintain
the secrecy of the door light design trade secret
are reasonable under the circumstances because
Plaintiffs would otherwise be deprived of control
of the manufacture and sale of the door light
design and would thus lose their ability to derive
income from the sale of the door light design.

16.

Dennis M. Healy, Holly Healy, Sky Corporation
Inc., and RKD Premium Products Inc., acquired the
door light design trade secrets under
circumstances giving rise to a duty to maintain
their secrecy or limit their use because
Defendants had a verbal contract with Plaintiffs
to use the trade secrets only to develop and
market them for eventual sale in the consumer
market.  Because Plaintiffs withdrew permission
from Defendants to use the trade secrets anymore
with Plaintiffs' letter to Defendants in early
March, 2009, Defendants' continued use of the

trade secrets by contracting with Defendants
Kenneth Tang and K's Products Company to market
the door light design without Plaintiffs'
permission at a trade show in Hong Kong in May of
2009, among other uses of the trade secrets that
Plaintiffs are still investigating, constitutes a
misappropriation of Plaintiffs' trade secrets in
violation of OR 646.461 (2)(d)(B) of the Uniform
Trade Secrets Act.

Defendants seek summary judgment as to Plaintiffs' claim for
violation of Oregon's UTSA, Or. Rev. Stat. § 646.461(2)(d), on
the ground that Plaintiffs' invention is not a trade secret.
Specifically, Defendants contend Plaintiffs publicly disclosed
their invention (1) in their July 2008 trademark filing, (2) on
their website as early as October 2008, and (3) at the Hong Kong
Mega Show in October 2008, and these displays "destroyed [the
invention's] secrecy."

Plaintiffs concede they displayed their invention on their
website and at the Hong Kong Mega Show in October 2008.
Accordingly, Plaintiffs "agreed to drop this cause of action from
the lawsuit" in their Response to Defendants' Motion for Summary
Judgment.

On this record, the Court concludes Plaintiffs' invention is
generally known to the public and Plaintiffs did not make
"efforts that are reasonable under the circumstances to maintain
its secrecy."  The Court, therefore, concludes Plaintiffs'
invention is not a trade secret within the meaning of the Oregon
UTSA.  Accordingly, the Court grants Defendants' Motion for

Summary Judgment as to Plaintiffs' claim for violation of the Oregon UTSA.

## III. Defendants are entitled to summary judgment as to Plaintiffs' claim for injunctive relief.

In their claim against Defendants for injunctive relief, Plaintiffs seek a permanent injunction "prohibiting Defendants from further dissemination of Plaintiffs' trade secrets." Because the Court has concluded Plaintiffs' invention is not a trade secret, the Court also grants Defendants' Motion for Summary Judgment as to Plaintiffs' claim for injunctive relief.

## IV. Defendants are entitled to summary judgment as to Plaintiffs' claim for breach of fiduciary duty.

In their claim against Defendants for breach of fiduciary duty, Plaintiffs allege in pertinent part:

> 25.
> Defendants Dennis and Holly Healy, Sky Corporation Incorporated, and RKD Premium Products Inc. entered into a principle [*sic*] agent relationship whereby Defendants would act on behalf of Plaintiffs for the benefit of Plaintiffs.

> 26.
> As part of that agency relationship, Defendants Dennis and Holly Healy, Sky Corporation Incorporated, and RKD Premium Products Inc. had a fiduciary duty to Plaintiffs to work toward Plaintiffs' benefit and to protect Plaintiffs' proprietary secrets.

> 27.
> Defendants Dennis and Holly Healy, and Sky Corporation Incorporated, and RKD Premium Products Inc. breached that fiduciary duty by misappropriating Plaintiffs' inventions and trade secrets in violation of Defendants' duty.

Plaintiffs allege they "mailed a letter to Defendants Dennis M. Healy, Holly Healy, Sky Corporation Inc., and RKD Premium Products Inc. terminating Plaintiffs' business relationship with all of these Defendants and thus withdrawing permission from these Defendants to use or disclose Plaintiffs' trade secrets regarding the inventions" in March 2009. First Am. Compl. ¶ 6. Plaintiffs further allege Defendants "misappropriated Plaintiffs' inventions and used them for their own benefit" on May 1, 2009. First Am. Compl. ¶ 9.

To avoid summary judgment on a claim for breach of fiduciary duty under Oregon law, a plaintiff must plead and prove (1) the existence of a fiduciary relationship, (2) breach of a fiduciary duty, and (3) the "breach caused an identifiable loss or resulted in injury." *Pereira v. Thompson*, 230 Or. App. 640, 654 (2009).

Defendants contend they are entitled to summary judgment as to Plaintiffs' claim for breach of fiduciary duty because a fiduciary's duties continue only as long as the parties remain in a special relationship, and the parties here were not in a special relationship at the time of the alleged breach.[2] Defendants rely on *Gangnes v. Lang*, 104 Or. App. 135 (1990); *Commerce Mortgage Co. v. Indus. Park Co.*, 101 Or. App. 345

---

[2] Defendants contend they were never in a fiduciary relationship with Plaintiffs, but Defendants "do not attack that premise" for purposes of their Motion for Summary Judgment.

(1990); and *Dunkin v. Dunkin*, 162 Or. App. 500 (1999), to support their contention.

In *Gangnes* the court concluded the trial court did not err when it "rejected" the plaintiffs' claim for breach of fiduciary duty:

> Without some special relationship between parties, no fiduciary duty exists.  The relationship that plaintiffs rely on to impose a fiduciary duty is that of co-shareholders in a close corporation. However, when plaintiffs sold their shares to defendant on April 3, 1985, that relationship was terminated.  All of the alleged breaches of fiduciary duty occurred after the sale. Therefore, when the acts complained of occurred, there was no fiduciary relationship to be breached.  The trial court properly rejected the claim.

104 Or. App. at 140.

Similarly, the court noted in *Commerce Mortgage* that "[p]artners in a joint venture owe a fiduciary duty to one another . . . of loyalty, fair dealing and full disclosure in all matters effecting [*sic*] the conduct of the venture's business. The duty of one partner to another continues until the relationship is terminated." 101 Or. App. at 352-53 (quotation omitted).

Finally, the court noted in *Dunkin* that

> [a] fiduciary duty exists when there is a relationship of special confidence, in which one party to the relationship is bound to act in good faith and with due regard to the interests of the other. *Starkweather v. Shaffer*, 262 Or. 198, 205, 497 P.2d 358 (1972). . . .  That fiduciary duty continues "'while the parties contemplate

> dissolution of their marriage as long as the
> confidential relationship remains intact, and the
> parties are not dealing at arms' length through
> separate agents or attorneys.'" *Auble and Auble*,
> 125 Or. App. 554, 560, 866 P.2d 1239 (1993)
> (quoting *Eltzroth*, 67 Or. App. at 522, 679 P.2d
> 1369).

162 Or. App. at 507-08.

Plaintiffs contend their "claim for Breach of Fiduciary Duty continued past the contractual relationship between the parties and should not fail due to opposing counsel's unsupported allegations that such relationship had failed at the time of the events which form the basis of Plaintiffs' claim." Plaintiffs, however, do not point to any evidence in the record that establishes their relationship with Defendants continued past March 2009 or that Defendants owed Plaintiffs any fiduciary duty at the time of the alleged breach in May 2009.

On this record, the Court concludes Plaintiffs have not established the parties' relationship, fiduciary or otherwise, continued past March 2009. The allegations forming the basis of Plaintiffs' claim for breach of fiduciary duty involve actions by Defendants taken after March 2009. The Court, therefore, concludes, pursuant to *Gangnes, Commerce Mortgage*, and *Dunkin*, that Plaintiffs have not established a claim for breach of fiduciary duty because the parties were no longer in a fiduciary relationship at the time of the alleged actions by Defendants.

Accordingly, the Court grants Defendants' Motion for Summary

28 - OPINION AND ORDER

Judgment as to Plaintiffs' claim for breach of fiduciary duty.

## PLAINTIFFS' MOTION FOR LEAVE TO FILE
## [SECOND] AMENDED COMPLAINT

Plaintiffs move for leave to file a second amended complaint to add additional factual allegations to support their claims, to delete their claims for violation of Oregon's UTSA and for injunctive relief, and also to add a claim for conversion. Defendants object to Plaintiffs' request on the ground that Plaintiffs' proposed amendments would be futile.

### Standards

Federal Rule of Civil Procedure 15(a)(2) provides leave to amend "shall be freely given when justice so requires."

> The decision of whether to grant leave to amend . . . remains within the discretion of the district court, which may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

*Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008)(quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### Discussion

**I.   Plaintiffs' proposed amendments to their claim for breach of an implied-in-fact contract would be futile.**

Plaintiffs seek to amend the allegations in their claim against Defendants for breach of an implied-in-fact contract as

29 - OPINION AND ORDER

follows:

> ### 11.
> Later, on or about May 1, 2009, Defendants, in breach of the parties' agreement, continued to market and sell copies of Plaintiffs' inventions by such acts which include, but are not limited to, the selling of copies of Plaintiffs' inventions at a trade show in Hong Kong without providing any compensation to Plaintiffs for these sales.
>
> ### 12.
> Defendants Kenneth Tang and K's Products Company acted as agents for Defendants Dennis and Holly Healy, and Sky Corporation Incorporated and sold copies of Plaintiffs' inventions while possessing the knowledge that their acts were in breach of the implied contract Plaintiffs had made with Defendants Dennis and Holly Healy, and Sky Corporation Incorporated.
>
> ### 13.
> Defendants' breach of the implied-in-fact contract has caused Plaintiff to suffer damages in the amount of $1,000,000 or other amount to be proven at trial.

Defendants assert Plaintiffs' proposed amendments are futile because Plaintiffs' claim for breach of an implied-in-fact contract is preempted by patent law.  Defendants contend Plaintiffs still seek patent-like protection and do not allege any incremental rights over that provided under patent law.  Plaintiffs, in turn, contend their claim for breach of an implied-in-fact contract as amended is similar to the kind of claim in *Aronson*, and, therefore, it is not preempted.

The Court concludes Plaintiffs continue to seek in their proposed amendments the kind of relief that the Court in *Aronson*

30 - OPINION AND ORDER

indicated would be preempted by patent law.  Rather than seeking to enforce a royalty agreement that would continue to allow Defendants to sell Plaintiff's product, Plaintiffs seek general damages for Defendants' sales of either Plaintiffs' product or copies of the product without a license from Plaintiffs and without paying royalties to Plaintiffs.  In addition, Plaintiffs placed the product in the public domain at the October 2008 trade show and on their website before they allegedly entered into a contract with Defendants to produce and to sell the product.  Thus, unlike in *Aronson*, Plaintiffs' product has been in the public domain and Plaintiffs now appear to seek to withdraw it from that domain.

In addition, as in *Ultra-Precision*, Plaintiffs here have withdrawn their claim that their invention enjoyed trade-secret protection and have not alleged the information they provided to Defendants conferred a benefit for services rendered or provided a head-start over competitors.  Moreover, Plaintiffs continue to seek general damages for Defendants' alleged use and sale of Plaintiffs' device or copies of Plaintiffs' device despite the fact that Plaintiffs' device was not patented and was publicly disclosed by Plaintiffs at least as early as October 2008.

On this record, the Court concludes enforcement of the alleged agreement between Plaintiffs and Defendants would prevent others from using or copying Plaintiffs' product in contravention

31 - OPINION AND ORDER

of the patent-law policy against withdrawing ideas from the
public domain.  *See Aronson*, 440 U.S. at 1099.

Accordingly, the Court concludes amendment of Plaintiffs'
claim as to Defendants' breach of an implied-in-fact contract
would be futile.

**II.  Plaintiffs' proposed amendments to their claim for breach of
fiduciary duty would be futile.**

Plaintiffs seek to amend their claim for breach of fiduciary
duty as follows:

> 16.
> As part of that agency relationship, Defendants
> Dennis and Holly Healy, Sky Corporation
> Incorporated, and RKD Premium Products Inc. had a
> fiduciary duty to Plaintiffs to work toward
> Plaintiffs' benefit and to tender to Plaintiffs a
> portion of any money Defendants received as a
> result of selling any prototypes or produced
> copies of Plaintiffs' inventions.
>
> 17.
> Defendants Dennis and Holly Healy, Sky Corporation
> Incorporated, and RKD Premium Products Inc.
> breached their fiduciary duty to Plaintiffs by
> selling prototypes or produced copies of
> Plaintiffs' inventions and failing to tender to
> Plaintiffs any portion of the money Defendants
> received as a result of these sales.

As the Court noted, Plaintiffs have not established
Defendants' alleged fiduciary duties continued after Plaintiffs
terminated their relationship with Defendants, and, therefore,
pursuant to *Gangnes*, *Commerce Mortgage*, and *Dunkin*, Plaintiffs
have not established a claim for breach of fiduciary duty because
Defendants were no longer in a fiduciary relationship with

Plaintiffs at the time of Defendants' alleged actions.

The Court finds on this record that Plaintiffs' proposed amendments do not remedy the deficiencies of Plaintiffs' claim against Defendants for breach of fiduciary duty.  Accordingly, the Court concludes Plaintiffs' proposed amendments to its claim for breach of fiduciary duty would be futile.

## III. Plaintiffs' proposed amendment to add a claim for conversion would be futile.

In their Proposed [Second] Amended Complaint, Plaintiffs seek to add a claim against Defendants for conversion in which Plaintiffs allege they are the "owners of the inventions and any prototypes *or copies made of those inventions*."  Proposed [Second] Am. Compl. ¶ 20 (emphasis added).  Plaintiffs allege "[b]y selling prototypes *or copies* of Plaintiffs' inventions after Plaintiffs terminated their contract with Defendant, which had given Defendants permission to sell Plaintiffs' inventions during the term of the contractual relationship, Defendants have converted Plaintiffs' property."  Proposed [Second] Am. Compl. ¶ 21 (emphasis added).  Plaintiffs also seek general damages for the alleged conversion.

In *Ledesma v. D.R. Horton, Inc.*, the court addressed the issue of preemption of a conversion claim by the Copyright Act as follows:

> The gravamen of plaintiff's complaint . . . is that defendant used, copied, and distributed AbesWay throughout the United States without

33 - OPINION AND ORDER

> plaintiff's permission and benefitted financially
> from doing so, not that he asked defendant to
> return copies of the physical media containing the
> program and defendant failed to do so.  In other
> words, plaintiff is asserting an interest in the
> intellectual property rights related to the
> software, not merely an interest in certain
> tangible forms of the software.  Plaintiff's claim
> is quintessentially one for violation of an
> intellectual property right and alleges no conduct
> separate from a copyright infringement.  *See
> Daboub*, 42 F.3d at 290 (misappropriation claim
> preempted by Copyright Act where plaintiff alleged
> no misappropriation conduct separate from the
> alleged copyright infringement). . . .
> Plaintiff's state law conversion claim is
> preempted.

No. SA-08-CA-128-OG, 2008 WL 1912531, at *2 (W.D. Tex. April 29,
2008). *See also Pritikin v. Liberation Publs., Inc.*, 83 F. Supp.
2d 920, 923 n.1 (N.D. Ill. 1999)(a conversion claim will be
preempted when "'the plaintiff alleges only the unlawful
retention of its intellectual property rights and not the
unlawful retention of the tangible object embodying its
work.'")(quoting Paul Goldstein, *Copyright, Patent, Trademark And
Related States Doctrines* 777 (3d ed. 1993)).

The United States District Court for the District of Kansas
reached a similar conclusion in *Malik v. Lynk, Inc.*:

> If plaintiff's conversion claim concerned lost
> tangible property, it would not be preempted.  *See
> United States v. Board of Trustees of the Univ. of
> Ala.*, 104 F.3d 1453, 1464 (4th Cir. 1997).  Even
> viewing all allegations in plaintiff's favor,
> however, it is readily apparent that his
> conversion claim does not concern his tangible
> property, it concerns his intangible idea.
> Plaintiff does not seek the return of his lost
> property or damages to compensate him for the loss

34 - OPINION AND ORDER

of his tangible property. Plaintiff instead seeks damages based on lost profits and harm to his business because defendant profited from use of plaintiff's idea. *See* Complaint (Doc. # 1) at 7. Plaintiff alleges that his conversion claim is worth over $75,000, but provides no indication that his production sample and design were worth that much. *Id.* The complaint shows that plaintiff's conversion claim seeks to recover for the use of plaintiff's idea, not because defendant took plaintiff's tangible property. *See Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995) (conversion claim preempted when core of plaintiff's claim alleged misuse of copyrighted material); *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985) (unfair competition claim based on use of copyrighted material preempted by federal copyright laws).

No. CIV. A. 99-2015-KHV, 1999 WL 760217, at *3-4 (D. Kan. Aug. 18, 1999).

Even though the courts in *Ledesma* and *Malik* address state-law claims preempted by copyright law rather than patent law, the principles governing preemption of state-law claims by copyright law are similar to the principles that govern preemption of state-law claims by patent law.

In their proposed claim for conversion, it is clear that Plaintiffs seek damages for the copying and sale of their idea rather than for the sale of the physical device itself. In fact, in their Response to Defendants' Concise Statement of Facts, Plaintiffs admit "this case has nothing to do with real property." In addition, in their Response to Defendants' Motion for Summary Judgment, Plaintiffs did not point to any evidence in the record that their physical prototypes were worth the

35 - OPINION AND ORDER

$1,000,000 sought in damages.  Reading the Proposed [Second] Amended Complaint together with Plaintiffs' Response to Defendants' Motion for Summary Judgment and Plaintiffs' Response to Defendants' Concise Statement of Facts, it is apparent that like the claims in *Ledesma* and *Malik*, Plaintiffs' proposed conversion claim does not concern Plaintiffs' tangible property but rather their intangible idea.  The Court, therefore, concludes Plaintiffs' proposed conversion claim would be preempted by patent law.

On this record, the Court concludes Plaintiffs' proposed amendment to include a claim for conversion would be futile.


## CONCLUSION

For these reasons, the Court **DENIES** Plaintiffs' Motion (#13) for Remand to State Court; **GRANTS** the Motion (#9) for Summary Judgment of Defendants Dennis Healy, Holly Healy, Sky Corporation, Ltd., and RKD Premium Products, Inc.; and **DENIES as futile** Plaintiffs' Motion (#24) for Leave to File [Second] Amended Complaint.

The Court notes Defendants have a pending Counterclaim seeking a declaration that they are co-inventors of Plaintiffs' device.  The Court **DIRECTS** the parties to confer as to whether this Counterclaim will be pursued in light of the Court's rulings herein and as to whether any additional claims or defenses will

be asserted by any party.  The parties shall submit a joint

status report no later than **October 29, 2010**, containing a

proposed case management plan to address any remaining issues.

    IT IS SO ORDERED.

    DATED this 7th day of October, 2010.


                         /s/ Anna J. Brown

                         _____
                         ANNA J. BROWN
                         United States District